UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID CARSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | Civil Action No. 16-5163 (SDW)<br><br>OPINION |

**WIGENTON**, District Judge:

This matter comes before the Court on remaining Defendant Sherry Yates' motion for summary judgment. (ECF Nos. 66). Plaintiff failed to respond to the motion or file a statement of material facts in dispute. (ECF Docket Sheet). Also before the Court is Plaintiff's motion seeking a preliminary injunction (ECF No. 60), to which Defendant has responded. (ECF No. 67). For the reasons set forth below, this Court will grant Defendant's summary judgment motion, will enter judgment in favor of Defendant Yates as to all of Plaintiff's remaining claims, and will deny Plaintiff's motion seeking a preliminary injunction.

## I. BACKGROUND

Because Plaintiff David Carson[1] has failed to oppose or otherwise dispute Defendant's statement of material facts not in dispute submitted in support of Defendant's motion for summary judgment (Document 2 attached to ECF No. 66), this Court considers Defendant's statement of

---

[1] This matter was originally filed by Plaintiff Carson and a co-Plaintiff, Steven Grohs. (*See* ECF No. 1). Grohs, however, was dismissed from this matter on March 29, 2018. (ECF No. 53). As only Plaintiff Carson remains in this matter, this Court refers to Mr. Carson as Plaintiff throughout the rest of this opinion.

facts undisputed and admitted for the purposes of this opinion. Fed. R. Civ. P. 56(e)(2); Local Civil R. 56.1. The following facts are thus drawn from Defendant's statement of material facts and Plaintiff's statements during his deposition.

     Plaintiff is currently involuntarily civilly committed as a sexually violent predator (SVP) at the Special Treatment Unit (STU) in Avenel, New Jersey. (Document 2 attached to ECF No. 66 at 1). Plaintiff has been committed as an SVP since July 1999. (*Id.*). Although Plaintiff's prospects for release from the STU depend upon his completing treatment, Plaintiff is currently refusing treatment, and is therefore housed in the STU's South Unit. (*Id.* at 2). The section of the STU in which Plaintiff is housed – which is composed of a North, South, East, and West unit and houses a few hundred civil committees – has three washing machines and three dryers. (*Id.*; Document 6 attached to ECF No. 66 at 4-5). Beginning in 2014, those machines began to periodically break down. (Document 6 attached to ECF No. 66 at 7). Plaintiff contends that these breakdowns are indicative of "just negligence" on the part of the STU as the STU "wasted money on [repeated] repairs [rather] than outright just buying a new . . . machine."[2] (*Id.* at 8). Plaintiff admits, however, that the facility continues to repair machines as they break down. (*Id.*; Document 2 attached to ECF No. 66 at 2). The longest period of time during which Plaintiff could recall one of the machines being broken was "three months straight," and Plaintiff testified that once briefly only two washing machines and one dryer were functional. (*Id.*; Document 6 attached to ECF No. 66 at 5). Generally, however, repairs to nonfunctioning machines occurred either within a couple of days of break downs or between ten and fifteen days in extreme cases. (Document 6 attached

---

[2] Although Plaintiff and his co-plaintiff alleged in their initial complaint that these repairs illegally used money from a resident fund to pay for these repairs, Plaintiff himself denied this being the case during his deposition stating that "it's impossible" for the STU to use those funds to pay for repairs. (Document 6 attached to ECF No. 66 at 14).

2

to ECF No. 66 at 18). During his deposition, Plaintiff testified that the laundry problems were exacerbated by his fellow SVPs who worked in the laundry room who showed favoritism towards some committees and ignored clothing from others when limited machines were available. (*Id.* 10-11). The longest period Plaintiff had gone without freshly laundered clothes as a result of these machine breakdowns and favoritism was "a week at the most." (*Id.* at 15).

In addition to washing machines operated by SVP attendants, Plaintiff explained during his deposition that many SVPs, himself included, also handwashed their clothes and then hung them to dry on hooks in their rooms. (*Id.* at 15-16). Although these hooks were temporarily removed by security personnel during room searches, Plaintiff placed his hooks back on the wall and began using them to dry his hand washed clothes once more. (*Id.* at 12). Regardless, Plaintiff contends that the laundry issues both caused him to occasionally have to wear dirty clothing and also resulted in dirty laundry being present in the STU, which contributed a rank smell to the facility. Smell aside, however, Plaintiff never suffered any illness or injury as a result of the laundry issues, and denied suffering any sever emotional distress, stating that if he said that he had suffered any such issue he'd "be lying," stating that he was simply "tired" of dealing with laundry issues. (*Id.* at 17).

Following this Court's granting in part of Defendants' motions to dismiss, only a single named Defendant remains in this matter – Sherry Yates, who was the administrator of the STU at the time that the laundry issues about which Plaintiff complains took place. At his deposition, Plaintiff testified that Ms. Yates was the "administrator" of the STU who "respond[s] to . . . grievances and stuff like that," but whose main job was to "oversee all functions of the institution." (*Id.* at 12). Plaintiff therefore contends she had a duty to "make sure everything is functioning properly." (*Id.*). Yates, however, was not responsible for employing SVPs as laundry workers,

and by Plaintiff's own admission did not assign the workers who Plaintiff believes improperly favored some of his co-residents. (*Id.*). Although Plaintiff never complained to her about the laundry issues or otherwise raise them to her attention, he believes she must have seen some of the dirty laundry during her tours of the facility "twice a week." (*Id.* at 12-13).

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

Pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1, where, as here, the moving party files a proper statement of material facts and the non-moving party fails to file a responsive statement of disputed material facts, this Court is free to consider the moving party's statement of material facts undisputed and therefore admitted for the purposes of resolving the motion for summary judgment. *See, e.g., Ruth v. Sel. Ins. Co.*, No. 15-2616, 2017 WL 592146, at *2-3 (D.N.J. Feb. 14, 2017). Even where the defendants' statement of material facts is deemed admitted and unopposed, a district court is still required to "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [Defendants are] entitled to judgment as a matter of law" in order to grant summary judgment. *Id.* At 2 (citing *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

**B. Analysis**

The sole remaining Defendant in this matter, former STU administrator Sherry Yates, moves for summary judgment as to Plaintiff's claims. In his complaint, Plaintiff raised two claims – a claim that the laundry issues at the STU amounted to an unconstitutional condition of

confinement in violation of the Due Process Clause of the Fourteenth Amendment and its state equivalent, and that Defendant had improperly used funds from a resident welfare fund to pay for laundry repairs. As Plaintiff himself denied that any resident welfare fund money was used to pay for those repairs, (Document 6 attached to ECF No. 66 at 14), there is clearly no dispute as to that claim, and Defendant Yates is entitled to judgment as a matter of law on Plaintiff's claim that she improperly used funds from the resident welfare fund.

In her motion, Defendant argues that she is entitled to judgment as a matter of law on Plaintiff's laundry related conditions of confinement claim.[3] Because Plaintiff is civilly committed and is not serving a criminal sentence, his claim arises out of the Fourteenth, rather than the Eighth Amendment. *See, e.g., Hubbard v. Taylor*, 399 F.3d 150, 164-65 (3d Cir. 2005). Under the Fourteenth Amendment, "the proper inquiry is whether [the] conditions amount to punishment prior to an adjudication of guilt in accordance with due process of law." *Id.* at 158 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). While the Government may restrain the liberty of individuals not convicted of a crime to the extent those restraints are rationally related to the reason for the individuals' detention, there "remains a distinction between punitive measures that may not be constitutionally imposed [absent] a determination of [criminal] guilt and regulatory restraints that

---

[3] While this Court has construed this claim to raise a claim under 42 U.S.C. § 1983, Plaintiff also asserts that the laundry conditions violate his rights under the state constitution, presumably entitling him to relief under the New Jersey Civil Rights Act ("NJCRA"). The NJCRA is a state analogue to § 1983 which permits individuals to recover for violations of their rights under the state constitution for acts committed by persons acting under color of state law. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011); *see also* N.J. Stat. Ann. § 10:6-2. The NJCRA is therefore generally interpreted nearly identically to § 1983 and claims under the CRA are generally coterminous with and subject to the same defenses and immunities as those brought under § 1983. *Trafton*, 799 F. Supp. 2d at 443-44. As this Court is aware of no state court caselaw to the contrary, this Court therefore treats Plaintiff's NJCRA as essentially identical to his § 1983 claim and finds that Plaintiff's NJCRA claim fails for the same reasons this Court discusses below in relation to his § 1983 claim.

may." *Id.* (internal quotations omitted). Courts faced with such claims must therefore decide whether the restraint is imposed "for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the . . . facility officials, that determination will turn on whether [the restraint] has an alternative purpose . . . and whether it appears excessive in relation" to that purpose. *Id.* (quoting *Bell*, 441 U.S. at 538-39). Such legitimate government purposes include maintaining order and security in a detention facility, as well as operating the institution in a manageable fashion *Id.* Ultimately, conditions of confinement will only violate a plaintiff's rights under the Fourteenth Amendment where the conditions "cause [detainees] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them." *Id.* at 159-60 (internal quotations omitted). This requires the Court to look to the totality of the circumstances under which the plaintiff is detained. *Id.* at 160. That the challenged conditions have not been shown to have contributed to disease, injury, or grossly unsanitary conditions are all relevant facts a court should consider in engaging in this analysis. *See Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008).

In his remaining claim, Plaintiff challenges the provision of laundry services at the STU, and specifically takes issue with the choice of the officials running the STU to choose to repair malfunctioning laundry equipment rather than purchasing new industrial washers and dryers, actions he contends amount to negligence. Reviewing the facts presented to this Court, it is clear that Plaintiff has failed to present a viable claim for relief. Turning to the factors announced in *Bell* it is clear that the Department of Corrections, and its employee Yates, had a valid, legitimate government interest in operating the STU and its laundry facilities in a reasonable and economical fashion. The decision of STU officials to repair, rather than replace, the industrial laundry

machines located in the facility is likewise rationally related to that legitimate government interest, and it is thus not for the Court to question the wisdom of that decision absent some proof on Plaintiff's part indicating that this decision was undertaken specifically to punish the committed SVPs. Plaintiff has presented no such evidence.

Likewise, Plaintiff has failed to show that the conditions in the STU, when viewed under the totality of the circumstances, amount to "genuine privations and hardship over an extended period of time." The testimony Plaintiff provided in his deposition indicates only that laundry machines in the facility have periodically broken down, only to then be fixed by the STU, usually in a timely fashion – less than fifteen days and often much less than that. Plaintiff identified only one period in which a laundry machine was down for as long as three months, and in any event indicated that the worst the situation got was the facility operating temporarily with only three of its six laundry machines. Even during that period, Plaintiff admitted he was free to hand wash his own clothing and dry it in his room, and never went for longer than a week without fresh laundry. Plaintiff likewise admitted that he suffered no disease or injury, nor any mental illness as a result of the laundry conditions. Viewing the totality of the circumstances, Plaintiff has failed to allege a genuine privation or hardship which extended over a long period of time, and his conditions of confinement claim must fail for that reason as well.

Additionally, Plaintiff has failed to show that Defendant Yates acted with a sufficiently culpable mental state to permit him to recover for any conditions of confinement even had he been able to show that the conditions he faced were sufficiently severe. Under § 1983, a plaintiff raising a Fourteenth Amendment conditions of confinement claim must show that the defendants acted with at least deliberate indifference to the conditions imposed upon him in order to establish liability. *See, e.g., Grohs v. Santiago*, No. , 2014 WL 4657116 (D.N.J. Sept. 17, 2014). This

requires that the plaintiff show that the defendants acted in a manner evincing "a reckless disregard of a known risk of harm." *Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, at *3 (D.N.J. Oct. 2, 2012). This requires a showing of more than mere negligence. *See, e.g., Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (negligence insufficient to establish deliberate indifference). Plaintiff's testimony and the remaining evidence in the record of this matter is patently insufficient to show that Defendant Yates acted in a manner indicative of a reckless disregard of a known risk of harm – indeed, Plaintiff himself contends she acted with simple negligence at worst. Plaintiff has thus failed to establish that Yates acted with the requisite intent, and Defendant is entitled to summary judgment for that reason as well.

Finally, this Court finds that Plaintiff has failed to connect the sole remaining Defendant in this matter – Sherry Yates – to the conditions he challenges. A plaintiff in a federal civil rights proceeding may not hold a defendant liable based solely on the defendant's supervisory role through a *respondeat superior* theory of vicarious liability. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Instead, a § 1983 plaintiff must establish that each defendant had "personal involvement in the alleged wrongs," *id.*, based either on their establishment of practices or policies which caused the alleged wrong, their personal direction of the bad actors to violate the plaintiff's rights, or their knowledge of and acquiescence to their subordinate's unlawful conduct. *Doe v. New Jersey Dep't of Corr.*, Civil Action No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015)); *see also Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (§ 1983 Plaintiff pleading supervisory liability must establish defendant's "participation [in the alleged wrong], or actual knowledge and acquiescence, to be liable"). In his deposition, Plaintiff connected Defendant Yates to his laundry claims solely based on his belief

9

that she, as administrator, was required to oversee all aspects of the STU. Plaintiff stated that he never complained to her about the issue, never wrote to her, or otherwise raised it to her attention, but assumed she must have known simply because there was dirty laundry in the facility at the time of some of Defendant's visits to the STU. Plaintiff has identified no policy or procedure Yates put into place which caused the laundry issues, has failed to show that she was personally involved in the laundry operations,[4] and has otherwise failed to connect Yates to the laundry issue. Defendant is entitled to judgment as a matter of law on the laundry related § 1983 claim for that reason as well.

As Defendant is clearly entitled to judgment as a matter of law as to Plaintiff's remaining claims, Defendant's motion for summary judgment is granted and judgment in this matter is entered in favor of Defendant Yates. Likewise, because Defendant is entitled to summary judgment, Plaintiff cannot show that he is likely to succeed on the merits of his claims, and is therefore not entitled to a preliminary injunction. *See, e.g., Ward v. Aviles*, No. 11-6252, 2012 WL 2341499, at *1 (D.N.J. June 18, 2012). Plaintiff's motion for such an injunction (ECF No. 60) is therefore denied.

---

[4] Insomuch as Plaintiff took issue with favoritism shown by certain SVP laundry workers, Plaintiff as much as admitted that Yates did not place SVPs in those positions, and that treatment personnel not employed by the Department of Corrections instead made those decisions. Clearly Defendant was not involved in that portion of Plaintiff's claim.

**III. CONCLUSION**

For the reasons stated above, this Court GRANTS Defendant's motion for summary judgment. (ECF No. 66), and DENIES Plaintiff's motion seeking a preliminary injunction (ECF No. 60). An appropriate order follows.


Dated: May 16, 2019   *s/ Susan D. Wigenton*
　　　　　　　　　　　　　　　　　　　Hon. Susan D. Wigenton,
　　　　　　　　　　　　　　　　　　　United States District Judge